**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-03474-CMA-NYW

LATOYA GRADY,

      Plaintiff,

v.

DIRECTV CUSTOMER SERVICES INC.,
ALAN PALMER, and
JESSICA SISNEROS,

      Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

---

      This matter is before the Court on Defendants' Motion to Compel Arbitration and Stay Proceedings, Or Alternatively to Dismiss (Doc. # 30.)

      As discussed below, because Plaintiff's claims fall within the scope of DIRECTV's Mutual Agreement to Arbitrate Claims ("the Arbitration Agreement" or "the Agreement"), and because the Agreement is valid and enforceable, Defendants' Motion is granted.

## I.  BACKGROUND

      Plaintiff Latoya Grady began working for DIRECTV Customer Services, Inc. ("DIRECTV") as a Customer Care Representative on August 8, 2011.  (Doc. # 16, ¶ 11.) On the first day of her employment, Ms. Grady signed the Arbitration Agreement,

thereby acknowledging and agreeing that she had read the document, understood its

terms, and signed it voluntarily.  (Doc. # 30-1.)  The Arbitration Agreement states in

relevant part:

> **Disputes which shall be submitted to binding arbitration for final resolution include: all claims or controversies**, past, present or future, except claims identified in the Arbitration Procedure under the heading "Claims Not Covered by the Agreement," **arising out of an employee's employment or its termination,** that the Company may have against an employee or that an employee may have against any of the following[:] (1) the Company; (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and (5) all successors and assigns of any of them ("claims) [sic].
> . . . .

> Except as set forth in the Arbitration Procedure, the decision of the Arbitrator shall be final and binding upon all parties.  The parties' mutual promise to arbitrate differences, rather than litigate them before courts or other tribunals, provides adequate consideration for each other.

> **By entering into this Agreement, Employee does not waive his/her right to file an administrative claim or complaint with the appropriate administrative agency, but does waive his/her right to file a civil action and a jury trial,** because the Agreement provides for an adequate and equal opportunity for the vindication of claims and complaints through this arbitration process.

> . . . .

> **Arbitration under this Agreement may be compelled and enforced according to the Federal Arbitration Act** [9 U.S.C. § 1 et seq.] . . . and shall be conducted in accordance with the Arbitration Procedure. . . .

> This Agreement shall survive the employer-employee relationship between Employee and the Company, and shall apply to all claims whether they arises [sic] or are asserted during or after Employee's employment or alter Employee's separation of employment with the Company. . . .

(Doc. # 30-1) (emphasis added).  Pursuant to the Arbitration Agreement, DIRECTV is responsible for paying the fees and costs of the Arbitrator, and the employee is responsible for paying the costs of her own filing fees and any costs "which are normally incurred by a Plaintiff in a civil action."  (Doc. # 30-3 at 3.)

Ms. Grady, appearing *pro se*, filed her Complaint and Jury Demand in this Court on December 26, 2014, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Civil Rights Acts of 1870, 42 U.S.C. § 1981 ("Section 1981"), and state law.  (Doc. # 1.)  Specifically, she alleges that DIRECTV terminated her employment because of her race and gender, and also alleges that DIRECTV retaliated against her for complaining about her supervisor's racial harassment.  (Doc. # 1 at 4-6.)  She also brings two state-law claims: a breach of contract claim and a tortious interference claim with respect to an "implied employment contract with DIRECTV."  (Doc. # 1 at 5.)

Defendants filed the instant Motion on May 11, 2015; prior to filing the Motion, Defendants conferred with Ms. Grady, and she indicated that she opposed the Motion in writing.  (Doc. # 30 at 2, 30-4.)  The only explanation for her opposition was that "I definitely want my day in court before a jury for resolution of my claims."  (Doc. # 30-4.)  Magistrate Judge Wang held a status conference with both parties on June 2, 2015, and ordered Ms. Grady to respond to the instant Motion on or before June 4, 2015.  (Doc. # 32).  However, she did not respond on June 4, 2015, nor did she request more time to do so.  As of June 10, 2015, she has not responded.  As such, the Motion is ripe for consideration.

## II.  ANALYSIS

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") codifies a strong federal policy favoring the enforcement of arbitration agreements.  The FAA provides that "an agreement in writing to submit to arbitration an existing controversy shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *See* 9 U.S.C. § 2.  It also permits a Court to stay litigation and compel arbitration when one party has failed or refused to comply with an arbitration agreement.  9 U.S.C. §§ 3–4.  Specifically, section 3 of the FAA provides that if a suit is brought regarding a dispute covered by an arbitration agreement, "the Court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, **shall on application of one of the parties stay the trial of the action** until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3 (emphasis added); *see Roe v. Gray*, 165 F. Supp. 2d 1164, 1174 (D. Colo. 2001) (noting that, in adherence to 9 U.S.C. § 3, once an issue is established as within the scope of the arbitration clause in a valid arbitration agreement, then the Court shall stay proceedings until arbitration is complete).

Because arbitration typically is a matter of contract, *see AT & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1742 (2011), in deciding whether there is an enforceable agreement to arbitrate, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Like other contracts, then, arbitration agreements may be

invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The court's application of state law principles must also give "due regard . . . to the federal policy favoring arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 475–76 (1989). The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *Gilmer*, 500 U.S. at 26.

The decision whether to enforce an arbitration agreement requires a two-step inquiry: first, the Court must determine whether a valid agreement to arbitrate exists; and, second, the Court must determine whether the specific dispute falls within the scope of that agreement. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Pikes Peak Nephrology Assocs., P.C. v. Total Renal Care, Inc.*, No. 09-CV-00928, 2010 WL 1348326, at *5 (D.Colo. Mar. 30, 2010) (citation omitted).

As for the validity of the Arbitration Agreement, an arbitration clause must be contained in an "agreement in writing" to be enforceable under the FAA. *See* 9 U.S.C. § 2; *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) (same). In the instant case, Defendants submitted a copy of the written Arbitration Agreement signed by Ms. Grady, thereby satisfying the "in writing" requirement. Although Plaintiff did not respond to the instant Motion, the Court is mindful of the fact that she opposed Defendants' Motion because she wanted her "day in court before a jury for resolution of my claims." (Doc. # 30-4.) However, even construing this argument liberally, because Plaintiff is proceeding *pro se*, see *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991),

5

the Court can identify no reasons why the Arbitration Agreement is invalid or otherwise unenforceable.

For example, one of the most common arguments made in support of the revocation of an arbitration agreement is that the agreement was unconscionable. *See, e.g., Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249, 1254 (Colo. App. 2001). In Colorado, for a contract to be unconscionable, it must be both substantively and procedurally unconscionable. *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986). Substantively, however, there is nothing inherently unfair about requiring Ms. Grady to submit her claims to arbitration, nor about the terms of this particular Arbitration Agreement itself. Title VII claims have long been subject to mandatory arbitration, *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir. 1994), and the Supreme Court has recognized that arbitration is generally a sufficient medium for resolving federal statutory claims, including employment claims. *See Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 89 (2000); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.") Although the Tenth Circuit has expressed reservations about arbitration agreements that required employees to pay a significant part of the arbitrator's fee on the grounds that such a requirement effectively precluded access to a forum to pursue statutory

6

claims, *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230,

1235 (10th Cir. 1999), the Arbitration Agreement at issue in this case provides that

DIRECTV will pay the entire arbitrator's fee and that the employee is responsible for

paying the same costs she would in this Court (i.e., the costs of her own filing fees and

any costs "which are normally incurred by a Plaintiff in a civil action.")   (Doc. # 30-3 at

3.)

On the procedural side, the Arbitration Agreement was titled, in bold, large type,

"Mutual Agreement to Arbitrate Claims."  Additionally, it was easy to read, and plainly

indicated that Ms. Grady would be required to bring claims in arbitration and that by

signing the Agreement, would "waive [her] right to file a civil action and a jury trial."

(Doc. # 30-1.)  She signed the Agreement and indicated in doing so that she understood

it and signed it voluntarily.  (*Id.*)  Additionally, even if Ms. Grady were to argue she did

not read the Agreement prior to signing it, a party "generally cannot avoid contractual

obligations by claiming that he or she did not read the agreement."  *Vernon v. Qwest

Communications International, Inc.*, 857 F. Supp. 2d 1135, 1152 (D. Colo. 2012).

The Arbitration Agreement was also supported by consideration, in that

DIRECTV conditioned Plaintiff's employment on her signing the Agreement, and both

parties agreed to arbitrate the claims.  (Doc. # 30-1, 30-2); *see also Lucht's Concrete

Pumping, Inc. v. Horner*, 255 P.3d 1058, 1063 (Colo. 2011) (in the employment context,

an at-will employee who is offered a new condition of employment accepts that offer

through continuing the employment relationship, and receives consideration in the

continued employment relationship); *City of Colorado Springs v. Mountain View Electric*

*Assoc., Inc.*, 925 P.2d 1378, 1383 (Colo. App. 1995) ("A promise exchanged for a promise imposes mutual obligations and is sufficient consideration to render a contract enforceable.").   In sum, the Arbitration Agreement is valid.

It also clear that Ms. Grady's particular dispute falls within the scope of the Agreement.  The Agreement provides that "all claims or controversies . . . arising out of [her] employment or its termination" were subject to arbitration, notwithstanding whether such claims are made against DIRECTV, its employees, or both.  (Doc. # 30-1.)  Each of Plaintiff's causes of action, including her state-law claims, pertains to the termination of her employment and the facts leading up to her termination, and her claims are brought against both DIRECTV and its employees.  As such, Plaintiff's claims fall within its scope.  *See Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (arbitration clause which covered "all disputes or controversies arising under or in connection with this Agreement" covered not only those issues arising under the employment contract but also those issues with any connection to the contract).

Because the Arbitration Agreement was valid and enforceable, and because Ms. Grady's claims fall within its scope, the Court is required to stay this action pending arbitration.  *See Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (noting that it is reversible error for a district court to dismiss a case rather than entering a stay pending arbitration).

### III.  **CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that the Parties shall enter into arbitration under the terms of their arbitration agreement.

The Court, upon further review, finds that rather than leaving this case open for possibly months pending arbitration, this case should be administratively closed pursuant to D.C.COLO.LCivR 41.2, with leave to be reopened for good cause shown. Accordingly, it is

ORDERED that the Clerk of the Court shall ADMINISTRATIVELY CLOSE this action pursuant to D.C.COLO.LCivR 41.2.  It is

FURTHER ORDERED that the parties shall have leave to file a request to reopen within 14 days of the entry of the arbitrator's order in the arbitration.

DATED:  June 10, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge